UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RASHID BROWN,

    Plaintiff,

v.                                      Case No. 2:04-cv-248
                                             HON. GORDON J. QUIST

MICHAEL KOSKINEN, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

        Plaintiff prisoner Rashid Brown filed this civil rights action pursuant to 42 U.S.C. § 1983 asserting that defendants violated his constitutional rights. Plaintiff alleges that defendant Holmgren turned the water off in plaintiff's cell and "messed" with plaintiff's diet trays. Plaintiff asserts that he reacted violently to these actions. Plaintiff was placed on restrictions allegedly without justification. In one instance, Holmgren placed a tray in plaintiff's cell that was not plaintiff's diet tray. Holmgren allegedly did this because he knew plaintiff would have a reaction and then plaintiff could be given further restrictions. Plaintiff did react as he describes with "rage." As a result, plaintiff was placed in hard restraints in May 2002. Plaintiff asserts that he was strip searched and placed in a cell with gas and feces. Plaintiff was then forced to place a spit mask over his head before he would receive any medical care. Plaintiff felt that this was unreasonable and decided not to wear the mask. Plaintiff alleges that his restraints were too tight and that he had trouble drinking water. The nurses who checked his restraints refused to loosen the restraints, stating that it was a security issue. Plaintiff alleges that he suffered with pain and lasting injuries, including

a mental breakdown which caused him to try to kill himself, as a result of being placed in the hard restraints.

Defendants filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). While the evidence must be viewed in the light most favorable to the nonmoving party, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants assert that plaintiff failed to file grievances against three of the defendants and that this case should be dismissed under the total exhaustion rule. Plaintiff filed a motion to strike defendants' motion to dismiss for lack of exhaustion and a motion for sanctions for filing a frivolous motion. Plaintiff is correct that he exhausted his grievance remedies against each defendant. Defendants have failed to read plaintiff's entire grievance filings, focusing only on the

first page of the Step I grievance. Plaintiff named each defendant that is a party to this action in his grievance. Accordingly, it is recommended that defendants' motion to dismiss be denied on this issue, and plaintiff's motion to strike be granted. Plaintiff's motion for sanctions is well taken and presents a close question. However, it is recommended that plaintiff's motion for sanctions be denied.

Defendants argue that plaintiff was placed in standing hard restraints in an effort to control his behavior. The restraints were properly applied and monitored by custody and medical staff. While restrained, plaintiff continued to engage in disruptive behavior by slipping out of the restraints and by taking a handful of pills which required emergency treatment at the hospital. Defendants argue that plaintiff's constitutional rights were not violated.

Plaintiff acknowledges that he responded with "rage" when officers came to pick up his food tray on May 5, 2002. Defendants explain that plaintiff threw liquid containing feces at two officers through the lower slot of his cell door. The warden then authorized standing hard restraints and the use of chemical agents if necessary. Plaintiff continued to throw objects and feces through the food slot. After the chemical agent was used, plaintiff complied with orders to allow officers to place restraints on him. Plaintiff's restraints were routinely checked by a nurse, and plaintiff was escorted back to his cell. Plaintiff's restraints were checked by nursing staff. However, on some occasions plaintiff refused to allow nurses to check the restraints by being disruptive or assaultive. Plaintiff was charged and found guilty of several misconduct violations while he continued in his restraints. On May 15, 2002, plaintiff was able to slip out of his restraints. Plaintiff took a handful of pills and began swinging his chains at his footlocker. Plaintiff was taken to the hospital. When plaintiff was returned to the facility suicide prevention measures were taken. Plaintiff was placed on top of bed restraints.

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

Plaintiff's claim involving the use of restraints must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley*, 475 U.S. at 321-22.

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321); *accord McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). Physical restraints are constitutionally permissible where there is penological

- 4 -

justification for their use. *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996); *Hayes v. Toombs*, No. 91-890, 1994 WL 28606, at * 1 (6th Cir. Feb. 1, 1994); *Rivers v. Pitcher*, No. 95-1167, 1995 WL 603313, at *2 (6th Cir. Oct. 12, 1995).

Plaintiff's claim fails because it is clear from the facts presented and even from plaintiff's own allegations that there was a penological justification for the use of restraints, and, thus, the restraints were constitutionally permissible. In numerous cases, the Sixth Circuit has held that restraints were penologically justified where in light of the inmate's disruptive behavior, the inmate continued to pose a threat. *See Hayes*, 1994 WL 28606, at *1 (significant threat of further destructive behavior justified application of top-of-bed restraints against inmate); *Harris v. Ohio Dep't of Rehab/Corr.*, No. 91-3920, 1992 WL 56999, at *2 (6th Cir. March 24, 1992) (requiring inmate to wear restraint belt during visits was penologically justified); *Boswell v. Vidor*, No. 89-2372, 1990 WL 143501, at *1 (6th Cir. Oct. 2, 1990) (placing inmate in full restraints for twelve hours was justified where inmate had disobeyed a direct order by repeatedly refusing to return plastic gloves given to him for cleaning his cell); *Syncate-El v. Toombs*, No. 92-1421, 1992 WL 301270, at *2 (6th Cir. Oct. 21, 1992) (use of body chains during non-contact visits was justified in light of significant threat of further assaultive behavior given inmate's history of disruptive behavior). *See Rivers*, 1995 WL 603313, at *2 (top-of-bed restraints were appropriate even after inmate discontinued his earlier abusive, disruptive, and threatening behavior). Accordingly, the court finds that plaintiff cannot show, under the facts he has alleged, that there was a constitutional violation by his placement in hard restraints. Further, although plaintiff claims he should not have been placed in hard restraints, even hard restraints proved ineffective. Plaintiff was able to remove the restraints and continue his disruptive behavior, including an attempt to take his own life.

Similarly, plaintiff cannot show a violation of his equal protection rights. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff's allegations that he was denied the equal protection of the laws lack merit. To establish a violation of the Equal Protection Clause, a prison inmate must prove that a discriminatory intent or purpose against a disfavored class or excluded group was a factor in an action taken by prison officials. *See McCleskey v. Kemp*, 481 U.S. 279 (1987); *Heckler v. Mathews*, 465 U.S. 728 (1984); *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252, 265 (1977). The claim that Plaintiff was treated one way and everyone else was treated another way, by itself, is not sufficient to state an equal protection claim. *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992), *cert. denied*, 510 U.S. 842 (1993). Rather, Plaintiff must demonstrate that he was victimized by some suspect classification. *Id.* A person's conduct is legitimate for purposes of this clause even though it may have been mean-spirited, ill-considered, or otherwise unjustifiable, objectionable or unreasonable, so long as it was not motivated by class-based discrimination. *See Galbraith v. Northern Telecom Inc.*, 944 F.2d 275, 282 (6th Cir. 1991), *cert. denied*, 503 U.S. 945 (1992). Absent some allegation or proof that the law was applied differently to Plaintiff because of race, gender, age, or some other improper classification, no equal protection claim has been stated. *See Wagner v. Higgins*, 754 F.2d 186, 194 (6th Cir. 1985) (Conte, J., concurring). Plaintiff has failed to

show a violation of his equal protection rights.  Plaintiff was placed in restraints in response to his inappropriate behavior.

Similarly, defendants are entitled to qualified immunity.  Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful.  *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

"The procedure for evaluating claims of qualified immunity is tripartite:  First, we determine whether a constitutional violation occurred;  second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."  *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits.  *Dietrich*, 167 F.3d at 1012.  An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful.  Rather, in light of pre-existing law, the

unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours

of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). Plaintiff has failed to show the existence of a genuine issue of material fact on his alleged claims. It is recommended that the court grant defendants qualified immunity from liability.

Case 2:04-cv-00248-GJQ-TPG   ECF No. 96 filed 10/20/05   PageID.585   Page 10 of 12

Plaintiff filed two motion to amend his complaint. Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, "a party must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension and Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995). The court may deny leave to amend a complaint where the amendment is brought in bad faith, will result in undue delay or prejudice to the opposing party, or is futile. *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995), *cert. denied*, 116 S. Ct. 1354 (1996). The court must have knowledge of the substance of the proposed amendment to determining whether "justice so requires" an amendment. *Roskam Baking Co v. Lanham Machinery*, 288 F.3d 895, 906 (6th Cir. 2002). The court does not abuse its discretion by denying an amendment where the plaintiff has failed to submit a proposed amended complaint. *Id.* Where discovery was closed, and the plaintiff requested to add new causes of action and new parties, without explanation for the delay in bringing the motion to amend the complaint, it was not an abuse of discretion to deny the plaintiff's motion to amend. *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992). Plaintiff's proposed amendments, in the opinion of the undersigned, are futile and fail to present any new significant claims that could withstand a motion for summary judgment based upon the facts which justified plaintiff's placement in hard restraints. Moreover, the record is clear that plaintiff was monitored by staff and nurses, and the restraints were applied appropriately at all times.

The record indicates that a summons and complaint was issued to defendant Baril. The acknowledgement was signed by Betsy Ninko and not by an individual with the name of Baril. It does not appear that defendant Baril has filed an answer or response in this matter. Plaintiff has not taken any action to further prosecute this matter against defendant Baril. Moreover, defendant Baril should be dismissed for the same reasons that the other defendants are entitled to dismissal.

Plaintiff has failed to show that defendants violated plaintiff's rights. It is recommended that defendant Baril be dismissed from this action for failure to prosecute and because there has been no showing that defendant Baril was involved in violating plaintiff's constitutional rights.

It is further recommended that defendant Hares' motion to set aside entry of default be granted. "Under modern procedure, defaults are not favored by the law and any doubts usually will be resolved in favor of the defaulting party." 10 WRIGHT, MILLER AND KANE, FEDERAL PRACTICE AND PROCEDURE § 2681 (3d ed. 1998). The Sixth Circuit applies a three-part test which considers (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether culpable conduct of the defendant led to entry of the default. *Buck v. U.S. Dept. of Agriculture, F.H.A.*, 960 F.2d 603, 607 (6th Cir. 1992); *United Coin Meter v. Seaboard Coastline Railroad*, 705 F.2d 839, 845 (6th Cir. 1983). Since no trial date or other substantive deadlines have yet been set, plaintiff has not been prejudiced by the delay at issue. Further, defendant has set forth what appears to be a facially valid defense. As to the third element, defendant alleges that he is retired from the MDOC and was served at his residence. He was unaware how the matter would be handled since he was served at his residence. As soon as he discovered the appropriate procedure he, undertook immediate action to obtain representation in this action. "To be treated as culpable, the conduct of a [movant] must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Buck*, 960 F.2d at 608, (*quoting Shepard Claims Service v. William Darrah & Associates*, 796 F.2d 190, 194 (6th Cir. 1986). The court concludes that the strength of the first two factors and the lack of affirmative bad faith on defendant's part renders entry of default judgment inappropriate in this matter. *Id.*

In conclusion, it is recommended that defendant Baril be dismissed from this action for failure to prosecute and because there has been no showing that defendant Baril was involved in violating plaintiff's constitutional rights. It is also recommended that defendant Hares' motion to set aside default (docket #92) be granted, plaintiff's motion for default judgment (docket #76) be denied, and defendant Hares' motion to join co-defendants' motions and responses (docket #93) be granted. It is further recommended that defendants' motion to dismiss (docket #45) be denied, plaintiff's motion to strike (docket #51) be granted, plaintiff's motion for sanctions (docket #56) be denied, and defendants' motion for summary judgment (docket #22) be granted, dismissing this case in its entirety. Finally, it is recommended that plaintiffs' motion to strike (docket #30) , plaintiff's motion for a continuance (docket #37), plaintiff's motion for disclosure (docket #42), plaintiff's motion for order for exhibits (docket #43), and plaintiff's motions to amend (docket #40 and #65) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten days of your receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR. 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal of those issues or claims addressed or resolved as a result of the Report and Recommendation. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   October 20, 2005